Filed 2/4/15  In re A.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E061197 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1300040) |
| v. | OPINION |
| E.M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Tamara Wagner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Pamela Rae Tripp, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, and Carole A. Nunes Fong, Deputy County Counsel, for Plaintiff and Respondent.

1

Defendant and appellant E.M. (mother) appeals after the termination of her parental rights to A.R. at a Welfare and Institutions Code[1] section 366.26 hearing. She had filed a request to change order pursuant to section 388 (section 388 petition) seeking to vacate the section 366.26 hearing and reinstate reunification services. The court denied that request, held the section 366.26 hearing, and terminated all parental rights. On appeal, mother contends the court erred in denying her section 388 petition. We disagree and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. Detention, Jurisdiction, and Disposition

On November 15, 2013, plaintiff and respondent Riverside County Department of Public Social Services (DPSS) detained A.R. after a Los Angeles County social worker alerted hospital staff that mother and father might have fled to Riverside to give birth to their third child in order to avoid detention.[2] The worker explained that A.R.'s two siblings, dependents of the court in Los Angeles County, were in a permanent plan.[3] DPSS interviewed mother, who indicated she had participated in some of her case plan in Los Angeles but had been unable to complete it because she was homeless and lacked transportation. Mother tested negative for any illegal substances at the time of A.R.'s

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] Father is not a party to this appeal, so we limit references to him and his actions.

[3] Mother's reunification services for her other children were terminated on August 12, 2013.

birth. On November 19, 2013, DPSS filed a juvenile dependency petition under section 300, subdivision (b) (failure to protect), alleging that mother had a history of abusing controlled substances, including methamphetamine; had an open case concerning A.R.'s siblings; and had a criminal history, including grand theft, battery and willful cruelty to a child. On November 20, 2013, the child was detained and the court granted mother supervised visitation once per week, conditioned upon her testing clean for drugs prior to each visit.

According to the jurisdiction/disposition report filed on December 11, 2013, mother admitted having a history of mental illness and a drug problem. On December 9, she entered into a substance abuse treatment program, was drug testing, and had started parenting and domestic violence counseling. On December 13, DPSS filed a first amended petition adding the allegation that mother suffered from schizoaffective disorder and failed to take her prescribed medications. DPSS recommended that the allegations in the petition be sustained, family reunification services be denied, and that supervised visitation be no less than once per month. At the hearing on December 16, 2013, mother objected to these recommendations, and the matter was set for a contested hearing.

In the addendum report filed on January 9, 2014, DPSS did not change its recommendation. The social worker noted that mother's reunification services for her other children (dependents of the Los Angeles court) had been terminated on August 12, 2013, and a permanent plan had been initiated. Mother had tested positive for amphetamine and methamphetamine on December 30, 2013, and was removed from the "Sunrise Alcohol & Drug Rehab" program due to too many unexcused absences. The

3

social worked noted that mother had been without a stable residence for over a year and was unemployed.  On January 14, 2014, at the contested hearing, mother objected to the allegation that she had had limited prenatal care and schizoaffective disorder, claiming that her homeless situation prevented her from seeking the medical attention she needed.  She admitted having a positive drug test and asked the court for an opportunity to participate in a full drug rehabilitation program so that she could reunify with her new baby.  Following argument, the trial court found the allegations in the amended petition true, declared A.R. to be a dependent of the court, denied reunification services pursuant to section 361.5, subdivision (b)(10),[4] and set a section 366.26 hearing.

In the combined sections 366.26 and 366.3 report filed on May 1, 2014, DPSS recommended termination of parental rights and adoption as A.R.'s permanent plan.  DPSS noted mother's "extensive history" with substance abuse and child protective services.  This history included an incident from June 28, 2006.  On that day at approximately 1:39 a.m., mother was "passed out drunk in a parking lot," lying next to a baby stroller, while her one-year-old child was running in and out of traffic in the street.  The police were called, and mother's child was taken into protective custody.  By February 5, 2008, the child was returned to mother on family maintenance and the case was closed.  However, by January 2013, a new dependency petition was filed concerning A.R.'s older siblings.  Thus, when A.R.'s case was initiated 10 months later, mother had an open case involving her two older children with whom she had failed to reunify due to

---

[4] Section 361.5, subdivision (b)(10), provides that reunification services "need not" be provided if the parental rights of the parent over a sibling have been severed.

4

her refusal to participate in their case plan.  DPSS reported that visits between mother and child were good; however, mother had "not demonstrated that [she could] maintain a stable living environment for [her] child."  DPSS added that the prospective adoptive parent provides "a stable home and nurturing environment" for A.R. and has "always expressed her willingness to provide permanency for [A.R.] by way of adoption . . . ."

**B.  Mother's Section 388 Petition and the Section 366.26 Hearing**

On May 13, 2014, mother filed a section 388 petition.  Specifically, she requested that the court (1) vacate its order denying services and setting a section 366.26 hearing, and (2) make a new order providing her with six months of family reunification services.  In support of the request, Mother pointed to the following changed circumstances:  She completed "Triple P Parenting" classes, enrolled in an outpatient substance abuse treatment program, has tested negative, has shown "responsibility for life choices," and is attending Alcoholics Anonymous (AA) meetings regularly.  According to the section 388 petition, "[Mother] wants an opportunity to bond with her daughter and believes that she would be an appropriate parent."  Attached to the petition was documentary evidence of mother's participation and attendance in various parenting and substance abuse counseling programs.  The documentation showed that mother's drug tests were negative and she had attended 21 AA meetings.

On May 14, 2014, the court heard mother's section 388 petition, and then proceded with the section 366.26 hearing.  Mother was not present.  Mother's counsel offered no explanation for mother's absence and submitted on the documentation presented.  DPSS argued mother's circumstances had not changed and she had failed to

5

address her mental health issues. Following argument, the court denied the section 388 petition, stating it could find no change of circumstances, and even if it could, it is not in A.R.'s best interests to grant additional services.

The court then held the section 366.26 hearing, terminated all parental rights, and selected adoption as the permanent plan.

## II. DISCUSSION

"Under section 388, a person with an interest in a dependent child may petition the court to change, modify, or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that there is a change of circumstances or new evidence, *and* the proposed modification is in the child's best interest. [Citations.]" (*In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1445.)

"The grant or denial of a section 388 petition is committed to the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is clearly established. [Citation.]" (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.) """The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court."' [Citation.]" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, the problems leading to the dependency were significant and serious. Mother was denied reunification services because a permanent plan had been initiated for her other children in Los Angeles. Moreover, she had an "extensive history" of substance abuse; she began using methamphetamine at age 16 and is now 37. During the

6

dependency of her other children, mother spent three weeks at an inpatient program before she checked herself out. After the November 30, 2013, detention hearing in this case, mother started substance abuse treatment and random testing; however, on December 30, 2013, she tested positive for amphetamines and methamphetamines.

We commend mother for voluntarily enrolling in a six-month outpatient substance abuse treatment program, ending on July 23, 2014; however, at the time of the hearing on her section 388 petition, mother's participation in such program failed to amount to a change in circumstances. Rather, it was only a first step in the long process of recovery, which mother recognizes. Even a showing of great effort to make improvements will not necessarily be persuasive when a parent has an extensive history of drug use. (*C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [Fourth Dist., Div. Two] [affirming the denial of a section 388 petition when the parents' efforts at drug rehabilitation were only three months old at the time of the section 366.26 hearing]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47-48 [affirming the denial of a section 388 petition when the mother with an extensive history of drug use had been drug free for only a few months and had not completed her treatment program]; *In re Mary G.* (2007) 151 Cal.App.4th 184, 205-206 [mother's very recent treatment for drug abuse and bipolar disorder was not even a prima facie case of changing circumstances].) "[R]elapses are all too common for a recovering drug user. 'It is the nature of addiction that one must be "clean" for a much longer period . . . to show real reform.' [Citation.]" (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424 [200 days], quoting *In re Kimberly F.* (1997) 56 Cal.App.4th

7

519, 531, fn. 9 [120 days].)  Thus, the court did not abuse its discretion in determining that mother had failed to establish changed circumstances for purposes of section 388.

Separately and alternatively, the court could reasonably find that granting the petition would not promote the best interests of the child.  "[B]est interests is a complex idea," and "a number of factors should be examined."  (*In re Kimberly F*., *supra*, 56 Cal.App.4th at p. 530.)  These include "the strength of relative bonds between the dependent child[] to *both* parent and caretakers . . . ."  (*Id*. at p. 532.)  They also include "the seriousness of the problem which led to the dependency . . . the degree to which the problem may be easily removed or ameliorated, and the degree to which it actually has been."  (*Ibid*.)  None of these factors favor the mother.

Regarding the relative strength of the competing bonds, given A.R.'s young age, we will assume that mother's consistent visitation was sufficient to call it a tie.  Thus, we turn to the reason for the dependency, namely mother's "extensive history" with substance abuse and child protective services.  For more than 21 years, mother has used methamphetamine.  Her substance abuse resulted in the termination of her parental rights to her older children.  Despite several attempts to overcome her dependence on drugs, mother has failed.  Although she argues that she is only asking for the opportunity to receive reunification services and not the immediate return of her child, the record shows she has not been able to reverse the course of her destructive lifestyle when provided services in the past.  Her recent commitment and success is insufficient to conclude anything has changed.  More importantly, a section 388 petition can be used to lengthen the period of time a parent receives services, in an appropriate case (see *In re Marilyn H*.

8

(1993) 5 Cal.4th 295, 309-310), but only up to a point. "Childhood does not wait for the parent to become adequate." (*Id*. at p. 310.)

Based on the above, we conclude the juvenile court properly denied mother's section 388 petition. The court has had this case since detention. It listened to all the evidence and indicated it had read and considered all the reports, including the section 388 petition. It was thoughtful and careful in its deliberations. There is nothing in the record to indicate that the court's decision was made in an arbitrary, capricious or patently absurd manner. Therefore, we discern no abuse of discretion.

### III. DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
J.

We concur:

RAMIREZ
P.J.

KING
J.